UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

------------------------------------------------------------------------ x

ILANA SCHERTZMAN COHEN, LESLIE      :
SCHERTZMAN, DONALD SCHERTZMAN,      :
DANIEL SCHERTZMAN, ARIELLA SCHERTZMAN      :   **Case No.**
FISHER, ABRAHAM SCHERTZMAN, YEHUDA      :
SCHERTZMAN, MYRIAM MILLER, CHANA AIDEL      :
MILLER SCHERTZMAN, and TOVA MILLER,      :

               :   **COMPLAINT**

                          Plaintiffs,      :

               :

 -against-      :

               :

ISLAMIC REPUBLIC OF IRAN      :
Ministry of Foreign Affairs      :
Khomeini Avenue      :
United Nations Street      :
Tehran, Iran,      :

               :

and      :

               :

ISLAMIC REVOLUTIONARY GUARD CORPS      :
Ministry of Foreign Affairs      :
Khomeini Avenue      :
United Nations Street      :
Tehran, Iran.      :

               :

               :

                        Defendants.      :

------------------------------------------------------------------------ x

      Plaintiffs Ilana Schertzman Cohen, Leslie Schertzman, Donald Schertzman, Daniel Schertzman, Ariella Schertzman Fisher, Abraham Schertzman, Yehuda Schertzman, Myriam Miller, Chana Aidel Miller Schertzman, and Tova Miller, by their attorneys, allege the following upon information and belief:

## NATURE OF THE ACTION

      1.     This is a civil action pursuant to the provisions of the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602 *et seq.*, including the terrorism exception to sovereign immunity, 28 U.S.C.

§ 1605A, against the Islamic Republic of Iran, a designated State Sponsor of Terrorism, and the Islamic Revolutionary Guard Corps ("IRGC"), for knowingly providing material support to the U.S.-designated Foreign Terrorist Organization ("FTO") (as that term is defined in 8 U.S.C. § 1189) Palestinian Islamic Jihad ("PIJ"), which perpetrated the terrorist attack in which Plaintiffs were injured.

2.      The United States designated Iran a State Sponsor of Terrorism on January 19, 1984, pursuant to § 6(j) of the Export Administration Act, § 40 of the Arms Export Control Act, and § 620A of the Foreign Assistance Act. This designation has remained in effect since that time.

3.      The United States designated the PIJ an FTO in 1997. This designation has remained in effect since that time.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this matter and over the Defendants pursuant to 28 U.S.C. §§ 1330(a), 1330(b), 1331, and 1605A(a)(1), which create subject-matter and personal jurisdiction for civil actions for wrongful death and personal injury against State Sponsors of Terrorism and their officials, employees, and agents.

5.      Twenty-eight U.S.C. § 1605A(c) provides a federal private right of action against a foreign state (including its political subdivisions, agencies, and instrumentalities, *see* 28 U.S.C. § 1603(a), (b)) that is or was a State Sponsor of Terrorism, and also against any official, employee or agent of that foreign state while acting within the scope of his or her office, employment or agency, for wrongful death, personal injury, and related torts.

6.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(f).

## THE PARTIES

### A.    The Plaintiffs

7.    Plaintiff Ilana Schertzman Cohen, age 31, is a citizen of the United States and a citizen and resident of Israel.

8.    Plaintiff Leslie Schertzman, age 59, is a citizen of the United States and a citizen and resident of Israel, and is Ilana's mother.

9.    Plaintiff Donald Schertzman, age 61, is a citizen of the United States and a citizen and resident of Israel, and is Ilana's father.

10.    Plaintiff Daniel Schertzman, age 32, is a citizen of the United States and a citizen and resident of Israel, and is Ilana's brother.

11.    Plaintiff Ariella Schertzman Fisher, age 34, is a citizen of the United States and a citizen and a resident of Israel, and is Ilana's sister.

12.    Plaintiff Abraham Schertzman, age 27, is a citizen of the United States and a citizen and resident of Israel, and is Ilana's brother.

13.    Plaintiff Yehuda Schertzman, age 24, is a citizen of the United States and a citizen and resident of Israel, and is Ilana's brother.

14.    Plaintiff Myriam Miller, age 50, is a citizen of the United States and a citizen and resident of Israel.

15.    Plaintiff Chana Aidel Miller Schertzman, age 21, is a citizen of the United States and a citizen and a resident of Israel, and is Myriam Miller's daughter (she later married Plaintiff Yehuda Schertzman).

16.    Plaintiff Tova Miller, age 18, is a citizen of the United States and a citizen and resident of Israel, and is Myriam Miller's daughter.

17.    Each of the Plaintiffs has been (and is still) a United States citizen at all relevant

times, including at the time of the terrorist attack alleged herein.

B.     **The Defendants**

18.     At all times relevant to this Complaint, Defendant Iran is and was a foreign state within the meaning of 28 U.S.C. § 1603 and a designated State Sponsor of Terrorism. Iran knowingly provided material support and resources for, and performed actions that caused, acts of extrajudicial killing and international terrorism, within the meaning of 28 U.S.C. § 1605A, including the attack that caused Plaintiffs' injuries.

19.     The government of Iran is politically and ideologically hostile to the United States and its allies, and has consistently sponsored acts of international terrorism, particularly through one of its main Palestinian proxies, the PIJ.

20.     Defendant Islamic Revolutionary Guard Corps ("IRGC") is a paramilitary force tasked with defending and exporting Iran's Islamic revolution. The IRGC also aids terrorist groups outside of Iran by offering funding, training, weapons, and other support on behalf of Iran. The IRGC does so primarily through its "Qods Force" division, which the United States designated a Specially Designated Global Terrorist pursuant to Executive Order 13224 on October 25, 2007.

## FACTUAL ALLEGATIONS

A.     **The Attack**

21.     During rush hour on November 4, 2001, Plaintiffs Ilana Schertzman, Myriam Miller, Chana Aidel Miller Schertzman, and Tova Miller were riding on Egged Bus #25, which was carrying mostly schoolchildren in the French Hill neighborhood of Jerusalem.

22.     A PIJ terrorist approached the bus while it was stopped at a red light and opened fire with an M-16 automatic assault rifle, spraying the bus and its passengers with bullets.

23.     The shooter emptied an entire rifle magazine into the bus before being shot and killed by police officers and a civilian in the area.

24.     By the time the attack was over, two schoolchildren aboard the bus had been murdered and more than 40, mostly children, had been injured.

### The Schertzman Family

25.     Ilana Schertzman Cohen, then age 15, was sitting on the bus behind her best friend, Shoshana Ben-Yishai. Ilana and Shoshana were leaning on each other, head to head, when the PIJ terrorist opened fire.

26.     Shoshana was shot in the head and killed right in front of Ilana's eyes. Many people on the bus who were seated close to Ilana were shot and their bodies fell near her.

27.     Shrapnel lodged in Ilana's neck, glass penetrated her hand, and her body was soaked with blood. Ilana was taken to the emergency room at Shaare Tzedek Medical Center for testing and treatment. She remained in the emergency room for many hours.

28.     Ilana still requires a delicate operation to remove some of the shrapnel remaining in her neck.

29.     The shrapnel in her neck continues to cause her pain. The pain is aggravated by hot weather, which often prevents her from going outside.

30.     Ilana may require injections in her neck for the rest of her life to help relieve pain.

31.     In addition to her physical injuries, Ilana has been traumatized by the attack. She received initial treatment from a board-certified neuro-psychiatrist on the day of the attack. Ilana has also sought treatment for years by a mental health professional and has never fully recovered. She has been diagnosed with post-traumatic stress disorder ("PTSD").

32.     For over two years following the attack, Ilana required someone to sleep in the room with her at night, in an attempt to ease her fears.

33.     As a result of the attack that injured her and killed her best friend, Ilana could not focus on her schoolwork. She was unable to complete high school until she was 28.

34.     Ilana also could not drive a car or ride public transportation for years following the attack.

35.     As a direct and foreseeable result of the attack, Plaintiff Ilana Schertzman Cohen has suffered severe physical and mental anguish and extreme emotional distress.

36.     After the attack, Plaintiff Leslie Schertzman, Ilana's mother, received a telephone call from the Shaare Tzedek Medical Center informing her that her daughter had been injured in a terrorist attack. She telephoned her husband, Plaintiff Donald Schertzman, who was working in the United States. She also telephoned her son, Plaintiff Daniel Schertzman.

37.     Leslie went to the hospital to see her daughter. Several hours later she learned that her daughter's best friend, Shoshana, had been killed in the attack. This news caused Leslie to be even more distraught because Shoshana was very close to the Schertzman family. After Leslie learned about Shoshana's death, she went into shock. As a direct result of these events, Leslie sought treatment by a board-certified neuro-psychiatrist upon leaving the hospital.

38.     Leslie has been diagnosed with PTSD. She has suffered panic attacks, sought professional treatment, and can no longer function in the same manner as prior to the attack.

39.     As a direct and foreseeable result of the attack, Plaintiff Leslie Schertzman has suffered from severe mental anguish and extreme emotional distress.

40.     Plaintiff Donald Schertzman, Ilana's father, received Leslie's telephone call on the day of the attack, informing him that his daughter had been injured in a terrorist attack.

41.     Donald has been treated by a mental health professional to cope with the emotional pain he has suffered since the attack. In addition to his own emotional distress, Donald has endured watching his wife, his daughter Ilana, and his other children undergo severe trauma as a result of the attack.

42.     Donald has also been confronted with additional financial expenses caused by treatment of his family's physical and emotional injuries that resulted from the attack.

43.     As a direct and foreseeable result of the attack, Plaintiff Donald Schertzman has suffered severe mental anguish and extreme emotional distress.

44.     Plaintiff Daniel Schertzman, Ilana's brother, received a telephone call on the day of the attack from someone at Shaare Tzedek Medical Center informing him that his sister had been injured in a terrorist attack. While en route to the hospital, he received another telephone call from his mother.

45.     Upon arrival, Daniel went to see his sister, who was still in shock. He was unable to believe that his family's dear friend Shoshana had been killed, so Daniel went to see for himself. When he went to the emergency room, he accidentally came upon Shoshana's body. Learning of his sister's injuries in a terrorist attack and seeing his friend's dead body has caused him great emotional distress.

46.     Daniel, like the other members of his family, has sought treatment by a mental health professional.

47.     As a direct and foreseeable result of the attack, Plaintiff Daniel Schertzman has suffered severe mental anguish and extreme emotional distress.

48.     Ilana's other siblings, Plaintiffs Arielle Schertzman Fisher, Abraham Schertzman, and Yehuda Schertzman, were notified shortly after the attack that their sister had been injured and that their dear friend Shoshana had been killed in a terrorist attack. These events have upset them greatly and necessitated their receiving treatment from a mental health professional.

49.     As a direct and foreseeable result of the attack, Arielle Schertzman Fisher, Abraham

Schertzman, and Yehuda Schertzman have suffered severe mental anguish and extreme emotional

distress.

### The Miller Family

50.     Plaintiff Myriam Miller was riding the same bus with her two daughters, Plaintiffs

Chana Aidel Miller Schertzman and Tova Miller.

51.     Myriam was sitting with Chana Aidel, then age 5, in her lap and Tova, then age 2,

in the seat next to her; two Israeli soldiers sat in the seats facing the Millers.

52.     The terrorist approached the side of the bus the Millers were sitting on, and opened

fire. Myriam witnessed the terrorist take aim at her and her daughters multiple times, but miss.

53.     Instead, bullets struck both soldiers sitting opposite the Millers. As they fell, they

pinned Myriam and Chana Aidel to the floor, such that Myriam was unable to reach her toddler,

Tova.

54.     Myriam watched helplessly while Tova lay screaming on her seat, covered in

broken glass.

55.     Eventually, someone on the bus was able to hide Tova under a seat.

56.     Myriam and Chana Aidel were covered in the blood of the injured soldiers.

57.     Myriam also suffered from cuts from broken glass, and Chana Aidel was badly

bruised. All three Millers were examined at the Mt. Scopus Hospital of the Hadassah Medical

center.

58.     Each of the Millers also witnessed Shoshana's murder and the murder and injury

of other bus passengers.

59.     Myriam witnessed the terrorist's attempt to murder her and her daughters, and

Chana Aidel and Tova each witnessed the terrorist's attempt to murder her, her sister, and her

mother.

60.     Myriam began seeing a psychologist a few months after the attack (and continues to do so). The psychologist diagnosed her with PTSD, and concluded that she exhibits the following PTSD symptoms: migraine headaches, panic attacks, generalized anxiety, nightmares, sleep disturbances, and acute reactions to loud noises or any reminders of the attack.

61.     Myriam frequently re-experiences the attack in her mind, and is often preoccupied by her inability to reach Tova during the attack.

62.     Myriam has been unable to work outside the home or use public transportation.

63.     Myriam's relationship with her husband, father to Chana Aidel and Tova, was strained due to her and her daughters' symptoms, and ultimately the marriage ended in divorce.

64.     As a direct and foreseeable result of the attack, Plaintiff Myriam Miller has suffered severe mental anguish and extreme emotional distress, along with physical injuries.

65.     Chana Aidel, only five years old at the time of the attack, has suffered from nightmares, flashbacks, anxiety, and depression as a result of her experiences in the attack.

66.     As a direct and foreseeable result of the attack, Plaintiff Chana Aidel Miller Schertzman has suffered severe mental anguish and extreme emotional distress, along with physical injuries.

67.     Tova, only two years old at the time of the attack, stopped speaking to nearly anyone, including her own father, for years following the attack.

68.     As a direct and foreseeable result of the attack, Plaintiff Tova Miller has suffered severe mental anguish and extreme emotional distress.

### B.     The Palestinian Islamic Jihad

69.     The PIJ—"Harakat al-Jihād al-Islāmi fi Filastīn" in Arabic, which translates literally to the Islamic Jihad Movement in Palestine—is a prominent Palestinian terrorist group

operating in the West Bank and Gaza Strip (the "Palestinian Territories").

70.     The PIJ is formally committed to the destruction of the State of Israel and its replacement with an Islamic, Palestinian state.

71.     The PIJ principally operates through the use of violence, such as suicide bombings, shootings and rocket attacks, to terrorize the Israeli population.

72.     The PIJ was founded in or around 1979 in Egypt by Fathi Shaqaqi and Abd al-Aziz Awda, two members of the Muslim Brotherhood social-political organization who believed that it had become too moderate and insufficiently committed to Palestinian issues.

73.     Although the PIJ was founded as a Sunni group by Sunni Muslims, Shaqaqi and Awda were openly inspired by the 1979 Shi'a Muslim revolution in Iran.

74.     The PIJ was expelled from Egypt to Gaza in 1981, following the October 6, 1981 assassination of Egyptian President Anwar Sadat by Islamist Egyptian soldiers and an ensuing crackdown on Islamist groups.

75.     Starting in the late 1980s, the PIJ has perpetrated scores of terrorist attacks against Israeli civilians and members of the Israeli military, including a number of attacks specifically aimed at derailing the peace process between Israel and the Palestinian authorities.

76.     In 1987, Israel expelled the PIJ's leadership to Lebanon, where it soon established direct contacts with Iranian officials, particularly through the Iranian embassies in Beirut, Lebanon and Damascus, Syria.

77.     In 1989, the PIJ established its headquarters in Damascus, where it remains to this day. However, the PIJ presence in the Palestinian Territories, managed from Damascus, also continues to the present.

78.     The PIJ's terrorist attacks are carried out by its so-called armed wing—the "al-Quds

Brigades" ("al-Quds" means "Jerusalem" in English).

### C. The PIJ's Responsibility for the Attack

79. On the same day as the attack that injured Plaintiffs, then-Jerusalem police chief Mickey Levy identified the attacker as Hatem Yaqin Ayesh Al-Sheweikeh (a.k.a., *inter alia*, Hatem Yaein al-Shuweiki), a known PIJ member.

80. Al-Sheweikeh was carrying a Palestinian identity card indicating his name, and his identity was also confirmed by the PIJ in several official statements.

81. The Israeli government identified the attack as carried out under the guidance of Muhammad Ayub Muhammad Sidr, the PIJ leader in Hebron.

82. On the same day, the PIJ claimed responsibility for the attack in a statement circulated in the West Bank, as reported by Israeli and Palestinian papers.

83. PIJ also posted claims of responsibility on the official website of the Al Quds Brigade, https://saraya.ps. *See, e.g.*, http://saraya.ps/post/16399/ and http://saraya.ps/view.php?id=2840.

84. The Al Quds Brigade website boasts that Al-Sheweikeh "carried out a heroic attack against a Zionist bus in the French Hill area," and that he "approached a bus that carried tens of Zionists and flooded them with intensive fire, that resulted in two of them dead and tens of them injured."

85. The website describes Al-Sheweikeh as a "hero holy warrior" who "joined the ranks of martyrs of Islamic Jihad."

### D. Iran's and the IRGC's Material Support for PIJ

86. Iran is the PIJ's primary benefactor, providing the vast majority of its funding, weapons, training, logistical support, ideological guidance, safe havens, and other material support.

87.     According to the Israeli government, PIJ Secretary General Dr. Ramadan Shallah described the PIJ as "a fruit from the bountiful tree of the [Iranian] leader Khomeini" during a meeting in Damascus.

88.     As noted above, the PIJ was initially inspired by the 1979 Islamic Revolution in Iran; soon after the revolution, Fathi Shaqaqi wrote a book praising the Ayatollah Khomeini called "Khomeini, the Islamic Solution and the Alternative."

89.     Following the PIJ's 1987 expulsion from Gaza to Lebanon, the PIJ made direct contacts with Iran in Beirut and set up its headquarters in Syria, Iran's closest ally.

90.     From that point on, PIJ leadership frequently travelled to Iran and Syria, often appearing in Iranian media meeting with Iranian leadership.

91.     In 1996, Iranian Vice-President Hassan Habibi met with Ramadan Shallah, and reaffirmed "the continuation of Iran's absolute support for the Palestinian oppositionists working against the peace agreement between Palestinian President Yasir Arafat and Israel."

92.     In fact, Iran has promised increased financial support for attacks committed by opponents of the Israeli-Palestinian peace process.

93.     According to Washington D.C.-based news source *Al-Monitor*, Iran's "support is not only limited to military aid, Tehran also sponsors families of Islamic Jihad prisoners and injured fighters of the faction."

94.     Iran's financial support of the PIJ had become significant by the 1990s. For instance, media reports state that Iran contributed $20 million to PIJ in 1994 (Fathi Shaqaqi claimed that Iranian support amounted to "only" $3 million for that year).

95.     Iran's financial support for the PIJ has only grown since then.

96.     *The New York Times* reported in 2002 that "United States officials said … that the Palestinian Islamic Jihad, one of the groups behind the wave of suicide bombings in Israel, was financed and directed by Iran. American and Israeli officials said that since the beginning of the Palestinian uprising 18 months ago, Tehran had paid millions of dollars in cash bonuses to the group *for each attack* against Israel." (Emphasis added.)

97.     In sum, Iran's financial support was provided continuously, routinely, in furtherance of and as implementation of a specific policy and practice established and maintained by Iran in order to assist the PIJ achieve goals it shared with Iran. These goals included terrorizing the Jewish civilian population in Israel and weakening Israel's economy, social fabric, and military strength and preparedness.

98.     In addition to financial support, Iran provided the PIJ with comprehensive logistical support and military-style training.

99.     Soon after Shaqaqi arrived in Damascus in 1990, PIJ operatives began training in Hezbollah camps in Lebanon (Hezbollah is Iran's main proxy for committing terrorism on a global basis) under the supervision of IRGC agents.

100.    Shortly after the Second Intifada (an approximately four-year period of conflict between Israel and the Palestinians) began in September 2000, Iran assigned a senior member of Hezbollah, Imad Mughniyeh, to assist Palestinian terrorist groups, including the PIJ.

101.    Mughniyeh was a renowned terrorist—for instance, he masterminded the 1983 Marines barracks bombing in Beirut, the deadliest terror attack aimed at Americans until the attacks on September 11, 2001.

102.    *The New York Times*, citing American and Israeli intelligence officials, reported in 2002 that "[o]peratives of Islamic Jihad … have been trained in Hezbollah camps in southern Lebanon and some have received specialized training inside Iran…."

103.    These camps were run by the IRGC. For instance, PIJ terrorists trained at camps in Lebanon's Beka'a valley run by IRGC General Ali Reza Tamzar.

104.    Moreover, this Court has repeatedly found that Iran and the IRGC are responsible for terrorist acts carried out by the PIJ in Israel, such as in *Belkin v. Iran*, 667 F. Supp. 2d 8, 18 (D.D.C. 2009) (finding that PIJ operatives trained at IRGC camps and that IRGC transferred funds and weapons to the PIJ); *Flatow v. Iran*, 999 F. Supp. 1 (D.D.C. 1998) (finding Iran responsible for PIJ terrorism); *Haim v. Islamic Republic of Iran*, 784 F. Supp. 2d 1 (D.D.C. 2011) (same); and *Wultz v. Islamic Republic of Iran*, 864 F. Supp. 2d 24 (D.D.C. 2012) (same).

## CLAIMS FOR RELIEF

### FIRST CLAIM: ASSAULT UNDER 28 U.S.C. § 1605A(c) (ILANA SCHERTZMAN COHEN, MYRIAM MILLER, CHANA AIDEL MILLER SCHERTZMAN, AND TOVA MILLER)

105.    Plaintiffs repeat and re-allege each and every allegation of the foregoing paragraphs as if fully set forth herein.

106.    Iran and the IRGC provided material support to the PIJ, intending or recklessly disregarding the fact that the PIJ would commit violent acts of terrorism in Israel, such as the one that injured Plaintiffs, and that such attacks would cause harmful or offensive contact to PIJ's victims and imminent apprehension of the same.

107.    Plaintiffs Ilana Schertzman Cohen, Myriam Miller, Chana Aidel Miller Schertzman, and Tova Miller were each on the bus when the PIJ terrorist opened fire on the bus and its passengers with an M-16 assault rifle.

108.    Ilana, Myriam, Chana Aidel, and Tova were put in imminent apprehension of being injured or killed by bullets or shrapnel. In fact, each was struck by flying glass or was otherwise physically injured during the attack.

109.    Ilana was struck in the neck with shrapnel, and in the hand with flying glass. She also feared for her life during the attack.

110.    Myriam suffered cuts during the attack, and feared for the lives of herself and her daughters.

111.    Chana Aidel was badly bruised during the attack, and feared for the lives of herself, her mother, and her sister.

112.    Tova was struck by flying glass and feared for the lives of herself, her mother, and her sister.

113.    Ilana, Myriam, Chana Aidel, and Tova also witnessed the murder and injury of other passengers, and suffered from severe mental anguish and extreme emotional distress as a result of their experiences in the attack.

114.    As a direct and foreseeable result of the attack and Iran's and the IRGC's support of the PIJ's terror attacks in Israel, Ilana, Myriam, Chana Aidel, and Tova have each suffered non-pecuniary damages in amounts to be proven at trial.

## SECOND CLAIM: BATTERY UNDER 28 U.S.C. § 1605A(c) (ILANA SCHERTZMAN COHEN, MYRIAM MILLER, CHANA AIDEL MILLER SCHERTZMAN, AND TOVA MILLER)

115.    Plaintiffs repeat and re-allege each and every allegation of the foregoing paragraphs as if fully set forth herein.

116.    Iran and the IRGC provided material support to the PIJ, intending or recklessly disregarding the fact that the PIJ would commit violent acts of terrorism in Israel, such as the one

that injured Plaintiffs, and that such attacks would cause harmful or offensive contact to PIJ's victims and imminent apprehension of the same.

117.    As described above, Plaintiffs Ilana Schertzman Cohen, Myriam Miller, Chana Aidel Miller Schertzman, and Tova Miller each received harmful or offensive contact as a direct result of the PIJ's attack.

118.    As a direct and foreseeable result of the attack and Iran's and the IRGC's support of the PIJ's terror attacks in Israel, Ilana, Myriam, Chana Aidel, and Tova have each suffered non-pecuniary damages in amounts to be proven at trial.

## THIRD CLAIM: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS UNDER 28 U.S.C. § 1605A(c) (ALL PLAINTIFFS)

119.    Plaintiffs repeat and re-allege each and every allegation of the foregoing paragraphs as if fully set forth herein.

120.    Iran and the IRGC provided material support to the PIJ, intending or recklessly disregarding the fact that the PIJ would commit violent acts of terrorism in Israel, such as the one that injured Plaintiffs, and that these acts of terrorism would cause severe emotional distress to any and all persons within close proximity of those attacks or those whose immediate family members experienced the attacks.

121.    Each of the Plaintiffs has suffered from severe emotional distress as a result of the attack.

122.    Plaintiffs Ilana Schertzman Cohen, Myriam Miller, Chana Aidel Miller Schertzman, and Tova Miller were all riding on the bus during the attack. Each of these plaintiffs witnessed the murder and injury of other passengers.

123.    Ilana witnessed the terrorist's attempt to murder her, and the murder of her best friend, Shoshana.

124.   Myriam witnessed the terrorist's attempt to murder her and her daughters and struggled to protect her daughter, Tova, who was out of her reach.

125.   Chana Aidel and Tova each witnessed the terrorist's attempt to murder her, her sister, and her mother.

126.   Plaintiffs Leslie Schertzman, Donald Schertzman, Daniel Schertzman, Ariella Schertzman Fisher, Abraham Schertzman, and Yehuda Schertzman, suffered the trauma of learning that their daughter and sister, Ilana, was injured in a terrorist attack, and suffered from watching her struggle to recover physically and emotionally.

127.   Daniel also saw his friend Shoshana's dead body shortly after the attack.

128.   As a direct and foreseeable result of the attack and Iran's and the IRGC's support of the PIJ's terror attacks in Israel, each of the Plaintiffs has suffered non-pecuniary damages in amounts to be proven at trial.

129.   Iran's and the IRGC's conduct was unreasonable and outrageous and exceeds the bounds usually tolerated by decent society, and was performed willfully, maliciously and deliberately, or with reckless indifference, to cause Plaintiffs severe mental and emotional pain, distress, anguish, and the loss of enjoyment of life.

## FOURTH CLAIM: PUNITIVE DAMAGES UNDER 28 U.S.C. § 1605A(c) (ALL PLAINTIFFS)

130.   Plaintiffs repeat and re-allege each and every allegation of the foregoing paragraphs as if fully set forth herein.

131.   Iran's and the IRGC's conduct was outrageous in the extreme, wanton, willful and malicious, and constituted a threat to the public at large, warranting an award of punitive damages in an amount sufficient to punish Iran and deter it and others from similar future wrongful conduct, pursuant to 28 U.S.C. § 1605A(c).

## **FIFTH CLAIM: PREJUDGMENT INTEREST (ALL PLAINTIFFS)**

132.    Plaintiffs repeat and re-allege each and every allegation of the foregoing paragraphs as if fully set forth herein.

133.    As described above, Iran's and the IRGC's support for the PIJ injured Plaintiffs, warranting an award of prejudgment interest from the date of the attack to the date of entry of judgment.

**WHEREFORE,** Plaintiffs demand that judgment be entered against Defendants in an amount to be proved at trial for the damages they suffered, including, but not limited to, physical and psychological injury, including extreme mental anguish and pain and suffering, severe emotional distress, punitive damages, and prejudgment interest against Defendants in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that this Court:

(a)    Accept jurisdiction over this action;

(b)    Enter judgment against the Defendants jointly and severally in favor of Plaintiffs for compensatory damages in an amount to be determined at trial;

(c)    Enter judgment against Defendants in favor of Plaintiffs for punitive damages in an amount to be determined at trial;

(d)    Enter judgment against Defendants in favor of Plaintiffs for prejudgment interest in an amount to be determined by the Court;

(e)    Enter judgment against Defendants in favor of Plaintiffs for any and all costs sustained in connection with the prosecution of this action, including attorneys' fees; and

(f)      Grant such other and further relief as justice requires.

Dated: June 20, 2017

**OSEN LLC**

By      /s/     Michael Radine
        Ari Ungar (DC Bar No. NJ008)
        Aaron Schlanger (DC Bar No. NJ007)
        Michael J. Radine (DC Bar No. NJ015)
        2 University Plaza Drive, Suite 402
        Hackensack, New Jersey
        Tel.: (201) 265-6400
        Fax: (201) 265-0303

        Attorneys for Plaintiffs